# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

| | |
|---|---|
| CLAYTON D. BROOKS, § <br> § <br> Plaintiff, § <br> § <br> vs. § <br> § <br> § <br> MICHAEL J. ASTRUE[1], § <br> Commissioner of Social Security, § <br> § <br> Defendant. § | Civil Action No. 1:06-CV-146-BI <br> ECF <br> Assigned to the U.S. Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

**THIS CASE** is before the court upon Plaintiff's complaint filed October 31, 2006, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff filed a brief in support of his complaint on February 23, 2007, and Defendant filed a brief on March 23, 2007. The parties consented to having the United States Magistrate Judge conduct all further proceedings in this case on November 3, 2006 (Doc. 8), and December 22, 2006 (Doc. 14). This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision should be reversed and this case should be remanded for further proceedings as more fully described herein.

---

[1] Michael J. Astrue has been appointed as the new Commissioner of Social Security, effective February 12, 2007, and is therefore substituted as Defendant in this matter for Jo Anne B. Barnhart, per FED. R. CIV. P. 25(d)(1).

## I. STATEMENT OF THE CASE

Plaintiff filed an application protectively for disability insurance benefits on November 13, 2003, alleging disability beginning October 22, 2003. Tr. 28. Plaintiff's application was denied initially and upon reconsideration. Tr. 28, 37-40, 43-46. Plaintiff filed a Request for Hearing by Administrative Law Judge on August 23, 2004, and this case came for hearing before the Administrative Law Judge ("ALJ") on November 30, 2005. Tr. 28, 47-48, 670-89. Plaintiff, represented by an attorney, testified in his own behalf. Tr. 672-88. Carol Bennett, a vocation expert ("VE"), appeared but did not testify. Tr. 28. The ALJ issued a decision unfavorable to Plaintiff on February 23, 2006. Tr. 25-34.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that: Plaintiff met the disability insured status requirements on October 22, 2003, through the date of his decision, and Plaintiff had not engaged in substantial gainful activity at any time since October 22, 2003. Tr. 28, 33. Plaintiff has "severe" impairments, including degenerative disk disease in the lumbosacral spine, status-post L5-S1 discectomy/fusion, a failed back syndrome, repaired torn cartilage in his right knee, degenerative changes and cartilage defects in his right ankle, and a history of tendonitis in the right elbow. Tr. 33. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 30.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. Tr. 33-34.

The ALJ found that Plaintiff could not return to his past relevant work as an oil field equipment repairman and shop foreman. Tr. 28, 32, 34. He noted that Plaintiff was considered a "younger individual" with a high school education. 20 C.F.R. §§ 416.963, 416.964; Tr. 32, 34.

The ALJ found that Plaintiff retained the exertional capacity for the sustained performance of a full range of light work activities with no other physical limitations or restrictions or work-related mental limitations. Tr. 34. The ALJ applied Rules 202.14 and 202.21 of the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. II ("the Grids") to direct a finding of "not disabled." *Id*. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 28, 34.

Plaintiff submitted a Request for Review of Hearing Decision/Order on April 17, 2006. Tr. 19-21. After granting a 25-day extension, the Appeals Council denied Plaintiff's request and issued its opinion on July 21, 2006, indicating that although it had considered the contentions raised in Plaintiff's Request for Review and a brief in support of the review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 7-17. The ALJ's decision, therefore, became the final decision of the Commissioner.

On October 31, 2006, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II. STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is

limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 5 that Plaintiff was not disabled by applying Rule 201.21 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 to direct a conclusion that there are jobs in significant numbers in the national economy that Plaintiff can perform. Tr. 34.

## III. DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ erred in applying the Medical-Vocational Guidelines ("the Grids") in this case. Plaintiff argues that he has nonexertional impairments which preclude reliance upon the Grids to direct a finding of not disabled. He further argues that the ALJ's RFC finding is not supported by substantial evidence in the record.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Where a claimant cannot perform the full range of a specific level of work activity or has significant nonexertional impairments, the ALJ may not mechanically apply the Grids, although they may be used as a framework. Application of the Grids is appropriate "when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999). The ALJ should make an individualized determination of the claimant's ability to perform specific jobs in the national economy where there are nonexertional limitations. *Carry v. Heckler*, 750 F.2d 479, 483 (5th Cir. 1985) (citing *Parris v. Heckler*, 733 F.2d 324, 326 (4th Cir.1984)).

Plaintiff argues that application of the Grids in this case was inappropriate because Plaintiff has several nonexertional limitations, including his unrelenting pain, the side effects of the pain medications which he requires to control his pain, depression, and a severe sleep disturbance. He further argues that the evidence of record demonstrates that he has other limitations on sitting, standing, bending or stooping, and the use of his right arm.

The record is replete with Plaintiff's complaints of pain. The ALJ indicated his recognition that "the claimant has experienced some degree of pain" but stated that "even a moderate level of pain is not, by itself, incompatible with the performance of certain levels of sustained work activity." Tr. 30.

As Plaintiff notes in his brief, he has consistently reported pain since 1996. The extensive treatment records indicate that Plaintiff was treated with various modalities for his pain which did not completely alleviate or remedy his pain. Indeed, Plaintiff sought back surgery to deal with his pain but did not obtain the results hoped for. However, Plaintiff points to numerous records in the medical evidence which pre-date the alleged onset date.

Dr. Joseph Dixon noted on November 7, 2003, that Plaintiff was unable to tolerate any of the anti-depressants. Tr. 586. He noted that Plaintiff was "fine when he got fired from his job" and said he "actually feels better" as the "stress is gone." *Id*. He noted Plaintiff's problems with finding a worker's compensation doctor locally. *Id*. Dr. Dixon noted on February 6, 2004, that Plaintiff continued to have a lot of problems, having chronic pain, being without a job, and caring for his child with Down's syndrome. Tr. 585. He noted that Plaintiff was being treated with multiple pain medications by Dr. J. Dozier and that he had depression. *Id*. Dr. Dixon completed a mental status examination. *Id*. He noted that Plaintiff had a flat affect, mood was depressed, he was oriented to time, place, and person, with fairly normal thought processes. *Id*. He noted that Plaintiff expressed bitter feelings toward his boss, his job situation, and life in general; that Plaintiff had good three-object recall with some problem with serial sevens; that insight and judgment was fair, and that Plaintiff was having some constipation, probably from the narcotics. Dr. Dixon completed a mental status examination report, wherein he opined that Plaintiff's prognosis was fair and that he had "severe anger issues" and some paranoia issues due to this. Tr. 584. However, Dr. Dixon indicated that Plaintiff "has been able to sustain work" for 23 years, although he had since lost his job. *Id*.

Plaintiff underwent an internal medicine consultative examination by Dr. Gunnam Ramachandran on March 23, 2004. Tr. 622. The consultative examiner ("CE") noted Plaintiff's complaints of low back pain for six years which was constant and worsened with prolonged standing or bending, without radiation of pain to the legs. *Id.* He noted that Plaintiff was on medications including OxyContin, Norco, Valium, and Restoril. *Id.* The CE noted that upon examination, there was pain in the lower back, and Plaintiff was unable to forward flex to touch his toes by about four feet from the floor, with spasm of the lumbar para-vertebral muscles. *Id.* He noted that Plaintiff was able to walk on heels and toes with some difficulty, had some difficulty squatting on the floor, with deep tendon reflexes equal bilaterally. *Id.* Dr. Ramachandran noted that gait was normal and that the x-rays of the lumbar spine showed post-operative changes with wire cages at the L5-S1 level. Tr. 622. He noted that the vertebrae otherwise appeared intact and in normal alignment with no compression deformities or subluxation identified. *Id.* His impression was status-post lumbar disc surgery with fusion, chronic low back pain syndrome, and a history of tendonitis of the right elbow. *Id.*

Dr. Edward J. Brandecker conducted a prospective review and medical examination on September 20, 2005. Tr. 667-69. He noted that as of January 20, 2005, Plaintiff remained on OxyContin 40 mg, twice per day, and a recommendation was made to change that medication to three times per day. Tr. 667. Plaintiff's medications included OxyContin, hydrocodone, Valium, Restoril or Ambien for sleep, and medications for constipation. Tr. 668. He noted that Plaintiff was informed on August 2, 2005, that Dr. Dozier would no longer be treating worker's compensation patients. Tr. 667. He noted that Plaintiff cared for his disabled child, performed household activities, and helped his child get to school, with an hour or so of activity followed by rest. Tr. 668. He noted Plaintiff's report of pain levels of 3 out of 10 with his medications. *Id.*

Upon examination, Dr. Brandecker noted that Plaintiff had a normal gait pattern, was able to walk on heels and toes, and was able to descend to and arise from a squat position. *Id*. He noted minimal tenderness through the lumbar spine, with lumbar flexion at 30 degrees and extension at 10 degrees, lateral bending at 10 degrees, and straight-leg raising limited to 60 degrees bilaterally. *Id*. Dr. Brandecker noted that lower extremity strength is full, with no focal weakness or atrophy. Tr. 669. His impression was status post posterior lumbar interbody fusion, L5-S1, and chronic post laminectomy pain. *Id*. Dr. Brandecker noted that Plaintiff was relatively stable on a dose of OxyContin 40 mg, three times per day, without any significant escalation, and with appropriate use of medications. *Id*. He opined that Plaintiff had a failed back surgery, with significant improvement in his pain as well as daily function with his current medication regimen. *Id*. He opined that Plaintiff should discontinue Valium, Restoril, and Ambien, given his report of a significant history of depression from the death of his child. *Id*.

Plaintiff testified that he was fired after he criticized something his boss did and not because of the incident where he pulled a gun on another employee. Tr. 677-78. Plaintiff testified that his medications helped him "very little." Tr. 686. He testified that when the medications kick in, they give him some relief and he does some household chores or yard work for an hour. Then he lies down because of pain. Tr. 686-87. He testified that he has daily back spasms, and the medications prevent him from being bedridden. Tr. 687. Plaintiff testified that his pain never goes away. *Id*. Plaintiff testified that his mother helped care for his son on a daily basis. Tr. 688.

In his opinion the ALJ noted that Plaintiff worked for approximately five and one-half years after he was injured with no post-onset signs of debilitating impairment such as gross neuromuscular, sensory, or reflex systems deficits. Tr. 30. He found that there was no convincing evidence of recent deteriorations and no indicia of intractable pain, such as weight changes, disuse muscle atrophy, guarding, or premature aging. *Id*. The ALJ found that Plaintiff's testimony and

-8-

other statements were generally credible but did not support the conclusion that he is incapable of performing any level of work activity. Tr. 33-34.

Clearly, pain may constitute a non-exertional impairment that limits the range of jobs a claimant otherwise would be able to perform. *See Carter v. Heckler*, 712 F.2d 137, 141-42 (5th Cir. 1983).

Moreover, pain may be disabling. A claimant's testimony of pain is insufficient to establish disability. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."). The ALJ's assessment of the disabling nature of the claimant's pain is due considerable deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). For pain to rise to the level of disabling, that pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Id.*; *accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Subjective complaints of pain must be corroborated by objective medical evidence. *Chambliss*, 269 F.3d at 522 (citing *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989)). Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. *Id.* (citing *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991)).

The ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren*, 925 F.2d at 128). The subjective testimony of Plaintiff must be weighed against the objective evidence of medical diagnosis. *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987) (citing *Jones v. Heckler*, 702 F.2d 616, 621 n.4 (5th Cir. 1983)). Subjective evidence need not take precedence over objective evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir 1988)). Moreover, a factfinder's evaluation of the credibility of

subjective complaints is entitled to judicial deference if supported by substantial record evidence. *Id.* (citing *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987)).

In his opinion the ALJ noted that Dr. Brandecker observed that Plaintiff reported significant improvement with his pain and daily activities on his current pain medication regimen. Tr. 30. The ALJ also noted that Dr. Brinkman opined that Plaintiff was experiencing significant but appropriate sadness in connection with the death of his child and his recovery from surgery. Tr. 31.

Plaintiff argues that the ALJ erred by finding at step 2 that his mental impairment was not "severe." Plaintiff argues that the ALJ failed to appropriately consider the evidence in the record as a whole, indicating that Plaintiff's depression had a more-than-minimal effect of his ability to perform work-related activities.

Plaintiff underwent a psychological mental status consultative examination on March 26, 2004 . Tr. 625-27. The psychological CE, Dr. Charles Rudolph, noted that Plaintiff reported having suicidal thoughts but could not follow through on them because he could not do that do his son. Tr. 625. He noted Plaintiff's report of caring for his 12-year-old son, reading the Bible, and watching TV news. *Id*. He noted that Plaintiff reported not going out much and seldom going to church or seeing his family. Tr. 626. He noted Plaintiff's report of depression and difficulty sleeping since the automobile accident in 1996, in which his older son was killed. *Id*. Dr. Rudolph noted Plaintiff's report of being fired after he pulled a gun on another employee who threatened to shoot him. *Id*. He noted that Plaintiff's speech was normal, there was no evidence of thought disorder, there was no evidence of delusions or paranoia, affect was reserved, and his score on the mini mental status examination was in the range of normal cognitive functioning. *Id*. He noted that Plaintiff was able to complete the memory tasks given, he was unable to calculate serial sevens but spelled "world" correctly, forward and backward, and repeated eight digits forward and backward. Tr. 627. He noted that judgment and insight were below average. He opined that Plaintiff's diagnosis was

adjustment disorder with depressed mood due to bereavement. He opined that Plaintiff's Global Assessment of Functioning ("GAF")[2] score on Axis V[3] of 50.[4] Tr. 627. Dr. Rudoph opined that Plaintiff's prognosis was guarded because of injuries that made it difficult for him to work, pending litigation, caring as a single parent for a child with Down's syndrome, and bereavement for a child lost in the automobile accident. *Id.*

Under the Social Security Regulations, the severity of an impairment or impairments is considered at the second step of the five-step sequential analysis. *See* 20 C.F.R. § 404.1520. A claimant must show that he or she has a severe medical impairment before the claimant can be determined disabled. 20 C.F.R. § 404.1520(a)(4)(ii). The regulations further provide that an impairment must significantly limit the person's ability to do basic work activities in order to be considered severe. 20 C.F.R. § 404.1520(c). Thus,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Commissioner] will find that you do not have a severe impairment and are, therefore, not disabled.

*Id.* The Supreme Court held that this "severity regulation" is valid on its face and "is not inconsistent with the statutory definition of disability." *Bowen v. Yuckert,* 482 U.S. 137, 146, 154, 107 S.Ct. 2287, 2293, 2298 (1987).

---

[2] The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32 ("DSM-IV"). This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id.*

[3] The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 25-30.

[4] The DSM-IV defines a GAF score of 51-60 as moderate symptoms (e.g. flat effect, circumstantial speech, and occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

The Fifth Circuit has considered the severity regulation, both before and after the Supreme Court's decision in *Bowen v. Yuckert*. In *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the Court approved of an earlier construction of the severity regulation that set this standard for determining whether a claimant's impairment is severe:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

*Id.* at 1101 (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). In *Loza* the Court held that the standard set forth in *Stone* remained the correct standard. 219 F.3d at 392. However, the Commissioner may require a claimant to make a *de minimis* showing that his or her impairment is severe enough to interfere with the ability to do work under this standard. *Anthony*, 954 F.2d at 293 n.5.

In this case the ALJ found that Plaintiff's mental impairment was not severe. He noted that Plaintiff has not required psychiatric in-patient care or assisted or supervised living services, he has not undergone court-ordered mental exams, and there is no history of involvement with child welfare agencies. Tr. 32. He noted that Plaintiff has not sought counseling and that there is no indication in the record of any gross emotional irregularities. *Id*. The ALJ noted that the psychological CE, Dr. Rudolph, diagnosed an adjustment disorder with depressed mood and assessed a GAF score of 50. *Id*. The ALJ indicated that Plaintiff "did not dwell on depression at the hearing." Tr. 31. He noted Plaintiff's report of tending to avoid others and becoming upset and irritable with stress and even small changes. *Id*.

The record demonstrates that Plaintiff reported his continuing problems with poor sleep while he was still working and thereafter. *See* Tr. 196, 425, 431, 433, 439, 507, 508, 509, 510. During the relevant period, Dr. Brandecker noted that the medications that Plaintiff took to deal with

his sleep problems "may only complicate" his psychosocial problems and suggested that they be discontinued. Tr. 669.

The record demonstrates that Plaintiff's treating physicians repeatedly noted his depression, secondary to the loss of his son and his continuing low back pain. After Plaintiff had stopped working, Dr. Dixon noted that Plaintiff continued to have a lot of problems, having chronic pain, being without a job, and caring for his child with Down's syndrome. Tr. 585. He noted that Plaintiff had depression and opined that Plaintiff had "severe anger issues." Tr. 584-85.

The ALJ found that Plaintiff's mental impairment was not severe, and he ascribed no limitations to Plaintiff's pain, sleep problems, and the side effects of his medications. While the record indicates, as the ALJ found, that Plaintiff did not did not seek counseling after he stopped working and did not exhibit gross emotional irregularities, cognitive limitations, or social isolation, the record also indicates that even after Plaintiff stopped working, he continued to experience depression for which he was treated, he was unable to tolerate the anti-depressants prescribed to him, he continued to experience pain and sleep problems, and he continued to experience side effects from the medications he was prescribed. The record also indicates that Plaintiff's depression, sleep problems, and pain were noted by his providers to be related. The record indicates that Plaintiff reported very little social contact beyond his family and reported that his activities were consistently limited by his pain. While Plaintiff did not dwell on his mental impairment during his testimony, his testimony and the evidence of record consistently indicate that Plaintiff continued to experience and report pain exacerbated by standing, walking, sitting, and other activities. He testified that his pain "never goes away. It just goes up and down," with the medication helping somewhat for short periods of time. Tr. 686-87. The record also consistently indicates that Plaintiff experienced difficulty with finding treating providers who would accept worker's compensation patients.

In the Fifth Circuit the claimant need only make a *de minimis* showing that his impairment is severe enough to interfere with his ability to do work to meet the severity threshold. *Anthony*, 954 F.2d at 294. The evidence in the record indicates that Plaintiff's sleep problems, mental impairment, and pain was of a nature to limit Plaintiff's ability to perform work activity. The record consistently indicates that Plaintiff's activities were limited by his pain, that he required pain medications in order to perform activities, and that he experienced stress, had possible anger issues, limited his social contact, and had a depressed mood related to his mental impairment. The record also indicates that Plaintiff experienced side effects from his pain medications. Plaintiff's sleep problems continued, and Dr. Brandecker opined that the medications he took to deal with these problems should be discontinued because of the possible effect on his psychosocial problems. The ALJ did not find that Plaintiff's complaints regarding these problems were entirely not credible. Instead, he found that Plaintiff was "generally credible," but his testimony, the objective evidence, and reasonable inferences therefrom did not support the conclusion that he is incapable of performing work activity.

The court has addressed together Plaintiff's arguments regarding the severity determination, regarding his mental impairment at step 2, and the finding that there are no nonexertional impairments because the medical evidence of record indicates that Plaintiff's pain, sleep problems, mental impairment, and the side effects from his medications are related. Having considered the record as a whole and giving appropriate deference to the ALJ's credibility determination, it appears that Plaintiff has clearly met the *de minimis* showing required for a finding that his mental impairment significantly limits his physical or mental ability to do basic work activities and thus constitutes a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Plaintiff testified that he lost his job because of a conflict with his boss, Dr. Randolph opined that Plaintiff had severe anger issues, and the evidence of record indicates that Plaintiff engaged in very little social contact.

The court finds that the ALJ's determination at step 2 that Plaintiff's mental impairment was not severe is not supported by substantial evidence in the record and that this case should be remanded for further administrative proceedings.

Plaintiff argues that the RFC assessment is not supported by substantial evidence in the record, given that he has testified that he is only able to sit and stand for 30 minutes at a time. He further alleges that he has other limitations, including limitations on the use of his right arm and limitations on crouching and bending. The regulations provide:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR § 404.1567(a). The ALJ essentially found that Plaintiff could perform the full range of light work activity.

It is, of course, the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion. *See* 20 C.F.R. §§ 416.946, 416.927(e). The ALJ is not required to incorporate any specific limitations into his RFC assessment simply because it appears in a medical opinion. Rather, the ALJ has the sole responsibility for weighing the evidence, may choose whichever physician's diagnosis is most supported by the record, and may incorporate into the RFC assessment the limitations supported by that diagnosis or diagnoses. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The ALJ also has the responsibility to resolve questions of credibility and questions arising from conflicting medical opinions. *Masterson*, 309 F.3d at 272. The task of weighing the evidence is the province of the ALJ. *Chambliss*, 269 F.3d at 523. The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.*

Having found that the ALJ erred at step 2 of the sequential evaluation process, the court does not reach Plaintiff's argument that the ALJ erred in making his RFC assessment by failing to incorporate all of the limitations imposed by his impairments into the RFC finding. Further consideration of the severity of Plaintiff's mental impairment at step 2 of the sequential evaluation process may affect the ALJ's RFC finding at step 3.

The court also does not reach Plaintiff's argument that the ALJ erred by applying the Grids. However, upon remand, the ALJ should further consider whether Plaintiff's pain, sleep problems, and the side effects of his medications constitute nonexertional limitations, should further consider the limitations imposed by all of Plaintiff's impairments in making his RFC determination, and should determine whether application of the Grids is appropriate in light of any further findings as to possible nonexertional limitations.

### IV. CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court finds that the Commissioner's decision should be reversed and this case should be remanded for further proceedings in accordance with this recommendation.

**IT IS, THEREFORE, ORDERED**, that this cause is reversed and remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g).

A judgment in accordance with this order shall be entered.

**SO ORDERED**.

DATED this 27th day of March, 2008.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**